### Hobbs *versus* Clements.

Sales of the land of *resident* proprietors, made by a collector, for the non-payment of taxes assessed thereon, are invalid, unless it appear from the advertisements for the sale, that nine months from the date of the assessment had already elapsed.

Where lands, belonging to a *non-resident proprietor*, are taxed to the tenant in possession, though the tax may rightfully be collected of the tenant, yet, per Tenney, J. *quære*, if, for the collection of the tax the land can be sold, as land of a resident proprietor.

Writ of entry for possession of a house and lot in Bangor.

The case was submitted for nonsuit or default upon a report of facts. The demandant claims under a sale made to him by a collector of taxes. One Marshall had mortgaged the property, and the tenant had become assignee of the mortgage. The right of redeeming had been fully foreclosed in 1842. Still Marshall occupied the whole of the premises till 1843, and of one half till the early part of May, 1844, at which time he removed from the State. The State, county and city taxes on the demanded premises were assessed to Marshall, for the years 1840, '41, '42, '43 and '44. Bowman was collector of the taxes of 1844, and received the taxes of that year, except $4,10. To collect that balance, on the 8th of May, 1846, he advertised as is stated in the opinion of the Court, and at the time appointed therefor, June 22, 1846, he sold and deeded the premises to the demandant, he being the highest bidder. The tenant's residence in Bangor commenced " in the winter of 1846."

*Hobbs*, for the plaintiff.

Did the collector, in his proceedings correctly treat this real

estate as that of a resident proprietor under Act of 1844, c. 123, § 10?

He did, if the estate was rightly assessed. It appears to have been sufficiently described and rightly taxed to Marshall, as tenant in possession, by virtue of R. S. c. 14, § 51, 54. Being "legally assessed," the Act of 1844, c. 123, § 10, created a lien on it.

The term "*resident proprietors*," is a technical one, used in a popular sense, as contra-distinguished from "*non-resident proprietors;*" the usual designation of the tax acts and tax books of the State. It is equivalent to the term occupant, who as such, has a possessory interest, or proprietary for purposes of taxation. This section has received a *legislative* construction in the Act of 1849, c. 131, § 1, where the term "resident proprietor" is, for purposes of personal notice, called "owner or occupant."

Any other construction would render it impossible, in many cases, particularly in cities, where property is rented largely by owners resident therein as well as elsewhere, to collect the taxes.

The collector's warrant is his only guide. The lists committed to him are denominated "residents" and "non-residents." The law points out a duty distinctly as to each. If the collector is to look out of his warrant to determine the question of proprietorship of land, he must settle the title correctly at his peril, or the tax cannot be collected.

Where shall the collector go for information? If to registry of deeds, he may find conflicting claims between residents and non-residents.

Who shall aid him? Must he file a bill of interpleader? He finds no tribunal having jurisdiction.

It was not intended by the Act of 1844, to repeal R. S. c. 54, § 51, 54. If this Act is in force, then the terms "occupant" and "tenant in possession" and of "resident proprietor" must be construed as having the same signification for the purposes of the tax acts.

*Cutting*, for defendant.

Hobbs *v.* Clements.

TENNEY, J. — The land in controversy was mortgaged by John E. Marshall to the Penobscot Mill Dam Company, on September 10, 1834 ; and this mortgage was assigned to the tenant, in July, 1835. A publication to foreclose the mortgage was duly made and recorded as early as November 4, 1839. A writ of possession was issued on February 19, 1844, upon a judgment in favor of the tenant against Marshall, recovered at the term of the Supreme Judicial Court, begun and holden in the county of Penobscot, on the fourth Tuesday of October, 1843. Marshall was in the occupation of the premises, during the years 1840, 1841, 1842 and 1843, and the taxes thereon for each of those years were assessed to him as a resident ; and also for the year 1844. The tenant resided in Mount Desert till some time in the winter of 1846, when he removed to Bangor. On January 9, 1844, he gave a written lease of the whole of the premises to one Chapman, who went immediately into the occupation of one-half the lot, and one-half the house standing thereon, and Marshall continued to occupy the other portion, till the early part of May, 1844. The demandant claims title to the land by virtue of a sale to him by the collector of taxes, for the city of Bangor, made on June 22, 1846, to obtain a balance of the taxes thereon, so assessed to Marshall for the year 1844.

On May 8, 1846, the collector posted up written notices to the resident owners and proprietors of land and real estate in the city of Bangor, whose taxes thereon had not been paid, that the same, which was particularly described, including that in dispute, were taxed for city, county and State taxes, in lists committed to him, for the year 1844, and that unless the taxes and intervening charges should be paid on or before the twenty-second day of June, 1846, so much of the real estate described, would be sold at auction, as would be sufficient to pay the taxes and charges ; but the notices gave no information of the date of the assessment, or for what period after the date thereof, the taxes had remained unpaid.

The land was advertised and sold as belonging to a resident proprietor, and not otherwise ; it is therefore insisted that the

sale and the collector's deed, cannot be effectual to pass the title to the demandant. By the tenth section of chap. 123 of the statutes of 1844, a lien is created upon real estate belonging to resident proprietors, for all taxes legally assessed thereon ; which lien shall continue in full force until the payment of the taxes. By R. S. chap. 14, sect. 51, the assessors are at liberty to assess improved lands to the tenants in possession or to the owners, and by the 54th section, if the assessors shall continue to assess any real estate to the person, to whom it was last assessed, the assessment shall be valid, though the occupancy or ownership may have been changed, unless previous to the last assessment notice of such change shall have been given. The tax upon real estate may therefore be legal, notwithstanding the person to whom it is assessed, may have been only a tenant in possession, or may have parted with all his interest in the land taxed, before the assessment ; but whether a lien is created by a tax upon land belonging to a non-resident, assessed after the removal from the possession, of the person to whom it was properly assessed at a previous time, does not necessarily depend upon the validity of the tax itself. It may as a tax be valid, and may be collected of the person against whom it was assessed, and still one which cannot be legally enforced in all the modes provided by the statute for the collection of taxes. This lien extends to land *belonging* to resident proprietors, and the provision of the statute does not in terms embrace other lands.

When the lands of non-resident proprietors are taxed as such, the modes of advertising the sale for the collection of the taxes are very different and intended evidently to convey actual notice to the owners, though living in other towns and at a distance from the premises ; but the notices of sales, for the purpose of obtaining payment of taxes assessed to resident proprietors, are not required to extend beyond the limits of the town where the land is situated. From the language of the statute it may well be doubted, whether land actually owned by a non-resident proprietor at the time of the assessment of the tax thereon, though legally taxed to a person

Hobbs *v.* Clements.

who is resident in the town, can be transferred by a sale made under the statute providing the mode for making effectual the lien upon resident proprietors. But it does not become essential to the final disposition of the case, that this question should be decided.

To constitute a valid sale for the non-payment of taxes, all the steps required by the statute must be taken. The provision under which the sale in this case was attempted to be made, is in these words, "if any such tax shall remain unpaid for the term of nine months from the date of the assessment, the collector may give notice of the same, and of his intention to sell so much of the real estate, on which said tax was assessed, as may be necessary for the payment of the tax and all charges, by posting notices thereof," &c.

In order that the sale and the deed made by the collector should pass the title to the land, before the notices required can have effect, it is necessary, that there should be a tax upon the land sold, that nine months should elapse after the date of the assessment of that tax, and that it should then remain unpaid. Without all this, the collector cannot legally proceed in any of the measures to make effectual, in the collection of the tax, the lien, which may be upon the land of a resident proprietor. But if they do all exist, "the collector of taxes may give notice of *the same,* and of his intention to sell," &c. Can it be said, that the notice may be limited to any one of these facts, or to more than one and less than all? If the reference is not to all, to which does it apply? No satisfactory answer it is believed, can be given, excepting, that the notice must state affirmatively each of these particulars.

The manifest purpose of this requirement was not only to let the party charged with the tax know, that there was such a tax against him, and unpaid, but that his delinquency had continued so long after the date of the assessment, that the law authorized proceedings, in the manner prescribed, to obtain the sum required, from the land, upon which the tax was based. Without such notice, which is of substantial utility to the person, against whom the tax remains undischarged, he is

not informed, in the manner which the Legislature have provided, that he is exposed to the costs, which will arise from an attempt to obtain the tax from the land itself. The notices posted up, previous to the sale, in this case, were defective in omitting to state that which the statute has made a prerequisite to a legal sale, and the title did not pass to the purchaser.

*Plaintiff nonsuit. Judgment for defendant.*

Note. — WELLS, J. being engaged in court in another county, did not sit in the hearing of this case, and took no part in the decision.